U.S.C.A. DOCKET NO. 23-1729

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

DESIGN GAPS, INC.; DAVID GLOVER; EVA GLOVER

Petitioners - Appellant

v.

SHELTER, LLC; DR. JASON HIGHSMITH; KACIE M. HIGHSMITH

Respondents - Appellees

On Appeal from the United States District Court
For the District of South Carolina, Charleston Division

---

## APPELLEE'S RESPONSE BRIEF

---

James E. Weatherholtz
Robert Andrew Walden
Andrea L. McDonald

Attorneys for Shelter, LLC, Dr. Jason Highsmith, and Kacie M. Highsmith

WOMBLE BOND DICKINSON (US) LLP
5 Exchange Street
P.O. Box 999
Charleston, South Carolina 29401
(843) 720-4634 (telephone)
James.Weatherholtz@wbd-us.com
Andrew.Walden@wbd-us.com
Andi.McDonald@wbd-us.com

**BRIEF OF APPELLEES**

Appellees Shelter, LLC, Dr. Jason Highsmith, and Kacie M. Highsmith, by and through their undersigned attorneys, submit this Brief of Appellees.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

No:  23-1729                    Caption:  Design Gaps, Inc. v. Shelter, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1, <u>Shelter, LLC</u>, who is <u>appellee</u>, makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity? **NO**

2. Does party/amicus have any parent corporations? **NO**
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? **NO**
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? **NO**
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) **NO**
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? **NO**
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? **NO**
   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held

corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.


Signature: ___s/ Andrea L. McDonald_____          Date:_____11/1/2023_____
*Counsel for Shelter, LLC, Dr. Jason Highsmith,*
*and Kacie M. Highsmith*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

No:  23-1729                    Caption:  Design Gaps, Inc. v. Shelter, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1, <u>Dr. Jason Highsmith</u>, who is <u>appellee</u>, makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity? **NO**

2. Does party/amicus have any parent corporations? **NO**
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? **NO**
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? **NO**
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) **NO**
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? **NO**
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? **NO**
   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held

corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.


Signature: ___s/ Andrea L. McDonald_____    Date:_____11/1/2023_____
*Counsel for Shelter, LLC, Dr. Jason Highsmith,*
*and Kacie M. Highsmith*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

No:  23-1729                      Caption:  Design Gaps, Inc. v. Shelter, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1, <u>Kacie M. Highsmith</u>, who is <u>appellee</u>, makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity? **NO**

2. Does party/amicus have any parent corporations? **NO**
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? **NO**
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? **NO**
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) **NO**
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? **NO**
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? **NO**
   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held

corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.


Signature: ___*s/ Andrea L. McDonald*_____          Date:_____11/1/2023_____
*Counsel for Shelter, LLC, Dr. Jason Highsmith,*
*and Kacie M. Highsmith*

# TABLE OF CONTENTS

DISCLOSURE STATEMENT of Shelter, LLC ....................................................... ii

DISCLOSURE STATEMENT of Dr. Jason Highsmith ......................................... iv

DISCLOSURE STATEMENT of Kacie M. Highsmith ......................................... vi

TABLE OF CONTENTS .................................................................................... viii

TABLE OF AUTHORITIES ................................................................................x

STATEMENT OF ISSUES ..................................................................................1

STATEMENT OF THE CASE..............................................................................2

STANDARD OF REVIEW ...................................................................................7

I.   THE ARBITRATOR ISSUED A REASONED AWARD THAT WAS
FINAL, DEFINITE, AND SUFFICIENTLY DETAILED SO AS TO PERMIT
JUDICIAL REVIEW...........................................................................................9

   A.   The Arbitration Award addressed each of the issues presented by the
parties and did not leave open questions.........................................................10

   B.   The Arbitrator issued a reasoned award, free of ambiguity and
sufficiently clear for a court to perform a meaningful review.........................11

   C.   In any event, the proper remedy is remand for clarification rather than
vacatur. ...........................................................................................................19

II.   APPELLANTS HAVE NOT MET THEIR "HEAVY BURDEN" TO
ESTABLISH THAT THE ARBITRATOR KNOWINGLY DISREGARDED A
SETTLED AND CONTRARY LEGAL PRINCIPLE.......................................20

   A.   The Arbitrator's observation that Appellants failed to enter into evidence
a valid copyright registration is not a manifest disregard of law, is immaterial
to the outcome and, thus, is not a ground for vacatur......................................21

   B.   Appellants' arguments regarding the Arbitrator's application of copyright
law are nothing more than a challenge to the Arbitrator's interpretation of such
law.  23

   C.   Appellants' waived their objection to the Arbitrator's interpretation of
the Contracts and, in any event, the Arbitration Award can be rationally
inferred by the Contracts..................................................................................27

III.   APPELLANTS HAVE NOT SHOWN THAT, BY DECIDING THE
ISSUES PRESENTED TO HIM, THE ARBITRATOR MISBEHAVED IN A

MANNER THAT PREVENTED A FAIR OPPORTUNITY TO PRESENT
THEIR CASE. ...................................................................................29

    A.   The Arbitrator did not prejudice Appellants by deciding the issues they
presented to him. ...............................................................................30

    B.   The Arbitrator ensured that Appellants had every opportunity to gather
and present evidence relevant to direct copyright infringement of non-parties.
    32

CONCLUSION .........................................................................................33

CERTIFICATE OF COMPLIANCE ....................................................35

# TABLE OF AUTHORITIES

## Cases

*Am. Ins. Managers, Inc. v. Guar. Ins. Co.*,
  No. 1:07-CV-1615, 2011 WL 1162374, (D.S.C. Mar. 29, 2011) .......................15

*Apex Plumbing Supply v. U.S. Supply Co.*,
  142 F.3d 188 (4th Cir. 1998)..........................................................................7

*Bouchat v. Baltimore Ravens Ltd. P'ship*,
  737 F.3d 932 (4th Cir. 2013) ........................................................................25

*Cannelton Indus., Inc. v. Dist. 17, United Mine Workers of Am.*,
  951 F.2d 591 (4th Cir. 1991) ................................................... 11, 13, 19

*Cmty. for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989) ......................................................................................24

*Curtis v. Blake*,
  709 S.E.2d 79 (S.C. 2011)..............................................................................10

*Doctor's Exch. of S.C. v. Am.'s Best Contacts & Eyeglasses*,
  26 F. App'x 236 (4th Cir. 2002)....................................................................30

*Hall St. Assocs., LLC v. Mattel, Inc.*,
  552 U.S. 576, (2008) .....................................................................................14

*Holden v. Deloitte & Touche LLP*,
  390 F. Supp. 2d 752 (N.D. Ill. 2005)............................................................15

*Interactive Brokers LLC v. Saroop*,
  969 F.3d 438 (4th Cir. 2020) .......................................... 14, 23-24, 26

*Jones v. Dancel*,
  792 F.3d 395 (4th Cir. 2015)..................................... 21, 23, 25, 26, 29

*Kadel v. N.C. State Health Plan for Teachers & State Emps*,
  12 F. 4th 422 (4th Cir. 2021)....................................................... 28, 30

*Karpel v. Inova Health Sys. Servs.*,
  134 F.3d 1222 (4th Cir. 1998).......................................................................28

*Leeward Constr. Co. v. Am. Univ. of Antigua-Coll. of Med.*,
   826 F.3d 634 (2d Cir. 2016) ...................................................... 8, 12, 19

*Long John Silver's Rests., Inc. v. Cole*,
   514 F.3d 345 (4th Cir. 2008) .......................................... 7, 20, 23, 24

*McClatchy Newspapers v. Cent. Valley Typographical Union No.
46*, 686 F.2d 731 (9th Cir. 1982) ...........................................20

*MCI Constructors, LLC v. City of Greensboro*,
   610 F.3d 849 (4th Cir. 2010) ..................................................... 12, 13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ...........................................................31

*Norfolk S. Ry. Co. v. Sprint Commc'ns Co.*,
   883 F.3d 417 (4th Cir. 2018) ...................................................9, 11

*Patten v. Signator Ins. Agency, Inc.*,
   441 F.3d 230 (4th Cir. 2006) ...................................................27

*PNGI Charles Town Gaming, LLC v. Mawing*,
   603 F. App'x 137 (4th Cir. 2015) ...........................................10

*Raymond James Fin. Servs., Inc. v. Bishop*,
   596 F.3d 183 (4th Cir. 2010) .............................................. 9-10, 20

*Three S Del., Inc. v. DataQuick Info. Sys.*,
   492 F.3d 520 (4th Cir. 2007) ...................................................7, 28

*U.S. Postal Serv. v. Am. Postal Workers Union, AFL–CIO*,
   204 F.3d 523 (4th Cir. 2000) ................................................. 28-29

*Upshur Coals Corp. v. United Mine Workers, Dist. 31*,
   933 F.2d 225 (4th Cir. 1991) ...................................................27

*Wachovia Secs., LLC v. Brand*,
   671 F.3d 472 (4th Cir. 2012) ................................................. 7, 12, 21

*Warfield v. Icon Advisors, Inc.*,
   26 F.4th 666 (4th Cir. 2022) .......................................... 7, 12, 14, 20-21

*Young–Anderson v. Spartanburg Area Mental Health Ctr.*,
   945 F.2d 770 (4th Cir.1991) ................................................................31

**Statutes**

9 U.S.C. § 10(a) ...................................................................................7

9 U.S.C. § 10(a)(3) ............................................................................29

9 U.S.C. § 10(a)(4) ..............................................................................9

**Rules**

AAA Commercial Arbitration Rule 32(a) ...........................................22

AAA Commercial Arbitration Rule 33(a) ...........................................29

AAA Commercial Arbitration Rule 34(a) ...........................................22

AAA Commercial Arbitration Rule 34(b) ...........................................22

AAA Commercial Arbitration Rule 42(b) .......................................12, 13

## STATEMENT OF ISSUES

(1) Whether the Arbitrator failed to provide a final and definite award in the form of a reasoned award and, if so, whether the remedy for such failure is vacatur or remand.

(2) Whether the Arbitrator manifestly disregarded the law when deciding evidentiary issues, applying copyright law, or interpreting the parties' contracts.

(3) Whether, in deciding the issue of indirect copyright infringement, the Arbitrator misbehaved by considering evidence of direct infringement by a non-party and did so in a manner such that the rights of Appellants were prejudiced.

1

## STATEMENT OF THE CASE

This dispute arises from the renovation of Appellees Jason Highsmith and Kacie Highsmith's (the "Highsmiths") residence at 376 Ralston Creek Street, Daniel Island, South Carolina (the "Residence"). (JA120). The Highsmiths engaged Appellee Shelter, LLC ("Shelter") to perform portions of the renovation. Ryan and Jenny Butler own Shelter and worked directly with the Highsmiths and Design Gaps. On August 18, 2020, the Highsmiths and Appellant Design Gaps, Inc. ("Design Gaps") entered a contract for various cabinetry throughout the Residence. (JA070). On September 6, 2020, Shelter and Design Gaps entered a contract for his-and-hers closets in the master bedroom. (JA073). The Highsmiths and Shelter requested completion of the Design Gap's work approximately four to eight weeks from contract signing, or October and November of 2020, respectively. (JA120). Design Gaps indicated that this time frame was achievable. (JA120, 122). Pursuant to these contracts with the Highsmiths and Shelter (the "Contracts"), Design Gaps prepared certain technical drawings and sent them to the Highsmiths and Shelter.

On May 14, 2021, after numerous and lengthy delays, the Highsmiths and Shelter terminated both Contracts with Design Gaps. (JA123). The Highsmiths and Shelter then hired Distinctive Design, LLC ("Distinctive Design") to finish the project. (JA120). Prior to terminating Design Gaps, the Highsmiths and Shelter met

with Bryan Reiss of Distinctive Design to discuss options for completing the project. (JA125). Shelter emailed Design Gaps' drawings to Distinctive Design for review.

On July 20, 2021, the Highsmiths and Shelter filed a demand for arbitration for breach of contract, promissory estoppel, fraud, and piercing the corporate veil against Design Gaps and its owners, David Glover and Eva Glover, and were assigned AAA Case Number 01-21-0004-8211 (the "Arbitration"). (JA167). On August 6, 2021, Mr. Glover filed the arbitration respondents' Answer and indicated that a counterclaim was forthcoming. (JA196). The Arbitration was conducted using the AAA Commercial Arbitration Rules, as required by Section 17 of the Contracts.

Following the September 16, 2021 preliminary hearing, the Arbitrator raised concern regarding potential unauthorized practice of law on the part of Mr. Glover since he intended to represent Design Gaps *pro se*. (JA218). Mr. Glover responded the same day to the Arbitrator's request in a lengthy brief, insisting that he be allowed to represent the parties in the arbitration. (JA216–217). On September 27, 2021, the Arbitrator shared an example order from another arbitration, which outlined the law and disallowed *pro se* corporate representation, as an example and requested additional comment.[1] (JA219–220). Mr. Glover responded to the

---

[1] Appellants have characterized this communication as an order from the Arbitrator finding that Mr. Glover could not provide *pro se* corporate representation. Appellants' Br. 7. However, that is not accurate. The order was not authored by the Arbitrator and merely shared with the parties with a request for comment.

3

Arbitrator with lengthy briefing, arguing his right to represent the respondents. (JA224–230). Mr. Glover then requested an extension to file counterclaims, which the Arbitrator granted. (JA231–233). On September 30, 2021, the Arbitrator issued the Report of Preliminary Hearing and Scheduling Order. (JA239).

Arbitration proceeded and Mr. Glover continued to represent himself, Eva Glover, and Design Gaps. On November 1, 2021, Mr. Glover filed counterclaims for breach of contract, tortious interference, libel, defamation, intentional infliction of emotional distress, violation of the Lanham Act, and unfair and deceptive trade practices. (JA242). The same day, Mr. Glover served extensive discovery requests. (JA262). Two weeks later, the parties submitted their witness lists. (JA268, 288). Mr. Glover then filed Revised Counterclaims on November 17, 2021. (JA291). Following a status call, the parties agreed to simplify the case to competing breach of contract claims (JA310), and the Parties proceeded with discovery, with each side issuing subpoenas, taking depositions, and providing discovery documents.

On February 24, 2022, three months prior to the merits hearing, the Arbitrator issued his Order allowing Mr. Glover to proceed with *pro se* corporate representation. (JA315). After the Arbitrator's Order and prior to the merits hearing, Mr. Glover took four depositions, filed various motions, and, on March 31, 2022, again revised the counterclaims. (JA316, 317–334). Mr. Glover, in violation of the prior agreement, asserted claims for negligence, material breach of contract,

4

fraudulent misrepresentation, failure to mitigate damages, tortious interference, civil conspiracy, unfair and deceptive trade practices, violation of the Copyright Act, conversion, and quasi-contract. (JA317–334).

The Arbitrator scheduled another status call for April 6, 2022, to determine if Mr. Glover could amend the counterclaims despite the prior agreement. Following briefs from the Parties, and the Arbitrator issued an Order on April 20, 2022, allowing the claims to be included (JA336–337) but finding he did not have authority to join additional parties who were not party to the Contracts' arbitration agreement (JA335). On May 2, 2022, the Parties provided their final witness lists and Mr. Glover listed only one witness in support of the case: himself. (JA341). Although the Arbitrator granted Mr. Glover's last-minute motion to include an additional witness (JA362), no one other than Mr. Glover was called to testify for Appellants.

The three-day merits hearing occurred on May 26, 27, and June 2, 2022. The Arbitrator expressly did not allow deposition transcripts of any testifying witness to be admitted into evidence, as both parties had the opportunity to thoroughly direct or cross-examine each witness. At the end of the merits hearing, the Arbitrator asked if the parties had presented all evidence they wanted to present in support of their claims, and all parties answered in the affirmative. (JA121).

The Arbitrator requested proposed awards from both parties by June 17, 2022. Notwithstanding the position that Appellants now take regarding the lack of a

5

reasoned award, Appellants submitted a three-page proposed award that contained no reasoning and provided blanks for the Arbitrator's input. (JA364–366). Petitioners further provided a "closing statement" that was eighty-two (82) pages in length, not including exhibits. (JA367–448). In response to this submission, which contained excerpts from deposition transcripts that had not been admitted into evidence, the attorney for the Highsmiths and Shelter requested that the Arbitrator only consider evidence that had been admitted at the hearing. (JA449).

On July 20, 2022, the Arbitrator issued an Interim Award containing seven pages of reasoned findings. (JA453). The Arbitrator then requested briefing within fifteen days on who should be awarded attorney fees under the "prevailing party" provision of the Contracts. On August 19, 2022, Petitioners filed an extensive brief challenging the Interim Award and, mainly, Mr. Coker as the Arbitrator. (JA091–118). Design Gaps then hired local attorney Alan Belcher, of Hall Booth Smith, P.C., to contest the Highsmiths and Shelter's fee submission. On October 7, 2022, the Arbitrator issued the Arbitrator's Final Award (the "Arbitration Award"), which was ten pages in length and provided a reasoned decision as to the claims and award of fees and expenses. (JA120–129). Petitioners did not file any further motions or other challenges to the Arbitration Award.

## STANDARD OF REVIEW

When reviewing a district court's refusal to vacate an arbitration award, the Fourth Circuit is "obliged to accept findings of fact that are not clearly erroneous and to assess conclusions of law de novo." *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 350 (4th Cir. 2008).

> Convincing a federal court to vacate an arbitral award is a herculean task. "Indeed, the scope of review of an arbitrator's . . . decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all – the quick resolution of disputes and the avoidance of the expense and delay associated with litigation."

*Warfield v. Icon Advisors, Inc.*, 26 F.4th 666, 669 (4th Cir. 2022) (alteration in original) (quoting *Apex Plumbing Supply v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998)). "When 'reviewing such an award, a district or appellate court is limited to determin[ing] whether the arbitrators did the job they were told to do – not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" *Id.* (alteration in original) (quoting *Three S Del., Inc. v. DataQuick Info. Sys.*, 492 F.3d 520, 527 (4th Cir. 2007)). An arbitration award may be vacated under "the very narrow statutory grounds . . . found in 9 U.S.C. § 10(a)" or where "an arbitral award [] rests upon a 'manifest disregard' of the law." *Id.* (quoting *Wachovia Secs., LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012)).

## ARGUMENT

Appellants advance three separate grounds to vacate the Arbitration Award. Each are without merit. First, Appellants argue that the Arbitrator imperfectly executed his powers by failing to submit a reasoned award. In doing so, Appellants request that the Fourth Circuit adopt the definition of "reasoned award" espoused by the Second Circuit. Nonetheless, even if this Court determines such an action is appropriate, Appellants fail to show that the Arbitration Award does not meet the Second Circuit's standard. In particular, Appellants' primary argument is that the Arbitration Award did not address all of Appellants' defenses, yet the Second Circuit has clarified that a reasoned award "need not delve into every argument made by the parties." *Leeward Constr. Co. v. Am. Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 640 (2d Cir. 2016).

Next, Appellants claim that the Arbitration Award demonstrates a manifest disregard of the law in several respects. First, Appellants argue that the Arbitrator incorrectly found that Design Gaps had failed to offer a valid copyright registration into evidence at the hearing. Yet, the case law they provide does not support their assertion that the certificate was admitted by virtue of its inclusion on the pre-hearing exhibit list. Second, they identify various aspects of copyright law purportedly misapplied by the Arbitrator. Critically, Appellants fail to show that the outcome would necessarily have been different had the legal principles been considered.

8

Third, Appellants argue that the Arbitration Award failed to draw its essence from the Contracts. While this argument is not appropriately raised on appeal, Appellants complaint appears to be directed at the Arbitrator's interpretation of the law or the Contracts, neither of which is a ground for vacatur.

Finally, Appellants seek vacatur of the Arbitration Award on the grounds that it prevented subsequent litigation of certain issues. This argument was not presented to the district court, and it is not appropriate on appeal. Furthermore, Appellants have not identified any obligation on the Arbitrator's part to consider whether the parties in Arbitration were acting in their own best interest by asserting certain claims.

## I.  THE ARBITRATOR ISSUED A REASONED AWARD THAT WAS FINAL, DEFINITE, AND SUFFICIENTLY DETAILED SO AS TO PERMIT JUDICIAL REVIEW.

Under the FAA, an arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Fourth Circuit has held that, although "[e]very presumption is in favor of the validity of the award . . . . [a]n award is not 'final' under the FAA if it fails to resolve an issue presented by the parties to the arbitrators." *Norfolk S. Ry. Co. v. Sprint Commc'ns Co.*, 883 F.3d 417, 422 (4th Cir. 2018). Vacatur may also be appropriate under this provision where the "award is so unclear or ambiguous that the court cannot engage in meaningful review." *Id.* at 424 (citing *Raymond James Fin. Servs.,*

9

*Inc. v. Bishop*, 596 F.3d 183, 191 (4th Cir. 2010) (affirming remand to the arbitration panel for clarification)); *see also PNGI Charles Town Gaming, LLC v. Mawing*, 603 F. App'x 137, 139 (4th Cir. 2015) ("Cases addressing this provision have vacated arbitration awards on this ground only when the arbitrator either failed to resolve an issue presented to him or issued an award that was so unclear and ambiguous that a reviewing court could not engage in meaningful review of the award.").

### A. The Arbitration Award addressed each of the issues presented by the parties and did not leave open questions.

Appellants suggest that the Arbitration Award was not "final." Specifically, they argue that their defenses were not addressed by the Arbitrator. Appellants' Br. 27. They conclusory observe that their "defenses directly addressed the central claims identified by the Claimants," yet did not provide any further explanation. In fact, Appellants' Answer in the Arbitration did not include any affirmative defenses, but merely denied the allegations against them. (JA196–215). Nonetheless, among their counterclaims, Appellants did assert a claim for "Failure to Mitigate Damages." (JA327). Although styled as a counterclaim, the failure to mitigate damages is an affirmative defense under South Carolina law, not a cause of action. *See, e.g.*, *Curtis v. Blake*, 709 S.E.2d 79, 81 (S.C. 2011) (emphasis added) (noting the defendant "asserted several *affirmative defenses*, including failure to mitigate damages and sudden emergency").

10

Nonetheless, the Arbitration Award does address the Highsmiths' and Shelter's failure to mitigate damages. In fact, the Arbitrator reduced the damages to account for the higher-quality products used by Distinctive Design. (JA123–124). The Arbitration Award also addressed the defenses to breach of contract claim raised by Appellants during the hearing: "During the hearing, Design Gaps set out a number of reasons for the delays which it argued were beyond its control. However, it continued to provide unreliable completion dates to the Claimants." (JA124).

Appellants did not identify any additional issues or claims that were left unanswered by the Arbitrator beyond their vague assertion that he did not address their unspecified "defenses." This contention lacks any support from the record and should be disregarded.

### B. The Arbitrator issued a reasoned award, free of ambiguity and sufficiently clear for a court to perform a meaningful review.

As observed by the Appellants, it appears that the Fourth Circuit has not yet defined what constitutes a "reasoned award." However, it has addressed the sufficiency of a written award several times in the context of a voluntary explanation from the arbitrator. The Fourth Circuit has stated that "[a] court may vacate an award if it is so unclear or ambiguous that the court cannot engage in meaningful review." *Norfolk S. Ry. Co.*, 883 F.3d at 424; *see also Cannelton Indus., Inc. v. Dist. 17, United Mine Workers of Am.*, 951 F.2d 591, 594 (4th Cir. 1991) ("When an arbitrator

11

does provide reasons for a decision and when those reasons are so ambiguous as to make it impossible for a reviewing court to decide whether an award draws its essence from the agreement, the court may remand the case to the arbitrator for clarification.").

Rather than operate under this guidance, Appellants have requested that the Fourth Circuit adopt the Second Circuit standard for a reasoned award as set forth in *Leeward Construction*. Appellees have no reason to believe that the Second Circuit's definition of "reasoned award" is inconsistent with Fourth Circuit precedent stated above—in fact, the requirements have the same effect merely stated in different words—yet it is not necessary to adopt a new standard under the circumstances.

1.  *The Arbitrator had no obligation to provide a reasoned award as it had not been requested prior to his appointment.*

The Fourth Circuit has repeatedly emphasized that arbitrators have no obligation to provide the reasons for their awards. *See., e.g.*, *Warfield v. Icon Advisors*, 26 F.4th 666, 673 (4th Cir. 2022) (quoting *Wachovia Secs., LLC v. Brand*, 671 F.3d 472, 481 (4th Cir. 2012)) ("Of course, 'arbitrators are not required to explain their reasoning.'"). In *MCI Constructors*, the Fourth Circuit considered whether an arbitration panel was required to provide a reasoned award after the parties had agreed to and requested one. *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 864 (4th Cir. 2010). Under Rule 42(b) of the AAA

12

Commercial Arbitration Rules, "an arbitration panel 'need not render a reasoned award unless the parties request such an award in writing prior to the appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate." *Id.* Although the parties requested a reasoned award during the hearing and prior to the arbitration panel's decision, the Fourth Circuit found that this was not sufficient to create an obligation on the arbitration panel. *Id.* "Here, the request was not made prior to the appointment of the arbitrators, and thus, the panel was not required to provide a reasoned award." *Id.*

Similarly, in this Arbitration, the parties did not submit a written request for a reasoned award prior to the Arbitrator's appointment. Instead, they reached an agreement on the desired form of award during a preliminary hearing. (JA240). The same rule, Rule 42(b) of the AAA Commercial Arbitration Rules, is applicable here. Accordingly, consistent with *MCI Constructors*, the Arbitrator was not obligated to provide a reasoned award under AAA procedure.

   2. *Reviewing courts consider only whether the Arbitrator did the job asked of him in accordance with the rules existing at the time.*

In the Fourth Circuit, when an arbitrator does provide a written opinion, it must resolve all of the issues presented and state the arbitrator's reasoning in sufficient detail that a reviewing court may determine if it was based upon a manifest disregard of the law. *Cannelton Indus.*, 951 F.2d at 594. The AAA Commercial

13

Arbitration Rules do not define "reasoned award"; they merely require that "[a]ny award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the form and manner required by law." R-45(a), AAA Commercial Arbitration Rules. Thus, holding the Arbitrator to any standard other than the established precedent and guidance provided by the AAA would be to expand the limited scope of judicial review. A courts' review should consist merely of determining "whether the arbitrators did the job they were told to do – not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Warfield*, 26 F.4th at 640 (4th Cir. 2022); *see also Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 443 (4th Cir. 2020) (quoting *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)) ("A more searching review would 'render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process and bring arbitration theory to grief.'"). Even if this Court decides to adopt the Second Circuit standard, it is not appropriately applied here to hold the Arbitrator to a new standard that was not in place at the time he authored the Arbitration Award.

3.  *Under the applicable Fourth Circuit, District of South Carolina, and AAA standards, the Arbitrator did the job he was asked to do and provided detailed reasons with references to the facts in support of his conclusions.*

Here, the Arbitrator did what he was asked to do. He considered the issues presented by the parties and issued a written award stating his findings and the facts supporting those findings. As conceded by the Appellants, no definition of reasoned

14

award is provided to the arbitrator by the AAA. However, the Preliminary Hearing and Scheduling Order indicates that a reasoned award falls somewhere between a standard award and findings of fact and conclusions of law:

**Form of Award: (Circle one)**

1. Standard Award
2. Reasoned Award
3. Findings of fact and conclusions of law

(JA240); *see also Am. Ins. Managers, Inc. v. Guar. Ins. Co.*, No. 1:07-CV-1615, 2011 WL 1162374, at *4 n.6 (D.S.C. Mar. 29, 2011) (quoting *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 780 (N.D. Ill. 2005)) ("A 'reasoned award' is 'something short of findings and conclusions but more than a simple result.'").

Although they raise the argument in the context of Second Circuit law, Appellants suggest that the Arbitration Award did not meet the standard specified in the Fourth Circuit—namely, that portions of the award were unclear so as to prevent the courts from determining whether a manifest disregard of the law was demonstrated. Appellants' Br. 30. Specifically, Appellants claim that the Arbitrator did not make a "barely colorable" decision on the outcome of their counterclaims for material breach of contract, fraudulent misrepresentation, tortious interference, unfair and deceptive trade practices, and violation of the Copyright Act. *Id.*

15

Nonetheless, the Arbitrator clearly stated his reasons for denying these counterclaims: First, Design Gaps' claim for material breach of contract was based upon the Highsmiths' and Shelter's termination of the Contracts and their alleged failure to pay. (*See* JA323–324). When addressing the Highsmiths' and Shelter's claim for breach of contract, the Arbitrator found that "[Design Gaps'] repeated failure to meet the many dates promised for completion justifies the termination of the contracts [by Claimants]." (JA124). As he turned to Design Gaps' counterclaims, the Arbitrator found that "[Design Gaps] conceded they had not completed its work by May 2021. I find this arbitration involves contract claims. The parties [sic] rights are all set out in the contracts. Design Gaps has received an offset against Claimants' completion costs for its contract balance. That is all it is entitled to receive." (JA125). Second, on the counterclaim for fraud, the Arbitrator found that "[Design Gaps] did not prove any false or reckless representation made by Claimants which caused it any damage; therefore, it is not entitled to anything on these claims." (JA125).

Third, the Arbitrator addressed the counterclaims for tortious interference and civil conspiracy together as they were based on the same facts—that by meeting with and engaging Distinctive Design while the Highsmiths and Shelter were under contract with Design Gaps—they "did Torturously [sic] Interfere with the Master Closet Contract . . . did so commit Civil Conspiracy in the act of doing so, Conversion of the Design Gaps, Inc. Copyrighted and Protected Designs . . . ."

16

(JA329 (including allegations in support of several counterclaims together)). The Arbitrator identified the specific facts supporting his decision on these counterclaims:

> Respondents did not establish any tortious interference in its contract by any party. It further did not establish that there was a civil conspiracy between and among the Claimants, Distinctive Design or any other party. While Claimants did meet with Distinctive Design as early as January 2021 to review Respondents' performance, the Claimants were advised by Distinctive Design to continue working with Design Gaps to achieve completion. When completion had not been accomplished by May 2021, only then did Claimants terminate the contract.

(JA125).

Fourth, the Arbitrator provided a brief explanation for his denial of the counterclaim for unfair and deceptive trade practices based on the Appellants failure to establish essential elements in support of their claim. "Respondents did not establish that Claimants' conduct was unfair or deceptive and therefore cannot sustain an unfair trade practices act claim. Respondents did not establish that the conduct it complains of was repetitive or in violation of the public interest." (JA125).

Finally, it is unclear how Appellants can reasonably contend that the Arbitrator did not provide ample support and explanation of his decision on the copyright issues. He provides a lengthy explanation of his decision and the facts and testimony supporting it:

> Respondents gave to the Claimants their drawings for the cabinets. Obviously, this was for Claimants' review, approval, and use

17

during the construction process. Claimants were free to use the drawings to measure the compliance of Design Gaps with these drawings and its obligation to install the designed cabinets in accordance with its contractual obligation. Respondents failed to enter into evidence a valid copyright registration; however, even if they had, Claimants certainly established fair use of the design work, especially considering that Shelter did not profit from the design. The sharing of a pdf of the design did not materially impair the marketability of the design. Respondents failed to prove that Claimants or anyone else converted its designs for this project. Bryan Reiss of Distinctive Design confirmed that he did not use Design Gaps' designs for the cabinets. I am convinced by Reiss's testimony and the exhibits provided that any similarity in the designs is due to the limitations of the space and the client's desired layout. Therefore, there has been no violation of any copyright which Respondent may have had.

(JA125–126). This thorough explanation is certainly sufficiently clear to allow a court to meaningfully review the decision, as required by the Fourth Circuit, and is inarguably more detailed than a standard award.

Essentially, Appellants argue that the Arbitrator's opinion is not as detailed as they desired. They provide no concrete examples of ambiguity or open issues, and their arguments regarding the Arbitrator's alleged disregard of the law demonstrates that the Award is sufficient to understand the facts considered and law applied. That Appellants are not satisfied with the outcome is not grounds for vacatur.

4. *Even under the Second Circuit definition of "reasoned award," the Arbitration Award should be confirmed.*

Appellants request that the Fourth Circuit adopt the Second Circuit's standard for a reasoned award. As stated, Appellees have no objection to this, and such

18

guidance may prove beneficial to arbitrators in the future. It also comports with Fourth Circuit precedent and seems to require no more detail than existing law. In *Leeward Construction*, the Second Circuit held as follows:

> [A] reasoned award is something more than a line or two of unexplained conclusions, but something less than full findings of fact and conclusions of law on each issue raised before the panel. A reasoned award sets forth the basic reasoning of the arbitral panel on the central issue or issues raised before it. It need not delve into every argument made by the parties.

*Leeward Constr. Co. v. Am. Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 640 (2d Cir. 2016). The Arbitration Award here easily meets this standard. As described above, the Arbitrator addressed each claim asserted by the parties and gave his reasoning for finding for the Highsmiths and Shelter. It "sets forth the relevant facts, as well as the key factual findings supporting its conclusions." *Id.* It reflects that both sides were afforded "ample opportunity" to present their cases but that the Arbitrator accepted the Highsmiths and Shelter's arguments on most points rather than Design Gaps' viewpoint. *See id.* "No more is needed." *Id.*

### C. In any event, the proper remedy is remand for clarification rather than vacatur.

The Fourth Circuit has routinely held that an ambiguous award should be remanded to the arbitrator for clarification rather than vacated. *See, e.g.*, *Cannelton Indus.*, 951 F.2d at 594 ("When an arbitrator does provide reasons for a decision and when those reasons are so ambiguous as to make it impossible for a reviewing court

19

to decide whether an award draws its essence from the agreement, the court may remand the case to the arbitrator for clarification."). Nonetheless, courts "approach remand to the arbitrator with care lest the arbitrator believe that a 'remand' is equivalent to 'retrial' with an expectation of an opposite result the second time around." *Raymond James Fin. Servs., Inc. v. Bishop*, 596 F.3d 183, 191 (4th Cir. 2010) (quoting *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 n.1 (9th Cir. 1982)). Accordingly, if the Court determines there are areas of the Arbitration Award that warrant clarification, remand to the Arbitrator for additional explanation is the accepted remedy.

## II.    APPELLANTS HAVE NOT MET THEIR "HEAVY BURDEN" TO ESTABLISH THAT THE ARBITRATOR KNOWINGLY DISREGARDED A SETTLED AND CONTRARY LEGAL PRINCIPLE.

"In order to overturn an arbitration award on the basis of the arbitrator's manifest disregard of the law, the party pursuing that effort must sustain a heavy burden, and is obliged to show that the arbitrator knowingly ignored applicable law when rendering his decision." *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 351–52 (4th Cir. 2008). "To establish manifest disregard, a party must demonstrate: "(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Warfield v. Icon Advisors, Inc.*, 26 F.4th 666, 669–70 (4th Cir. 2022). "To demonstrate that 'the

disputed legal principle is clearly defined and is not subject to reasonable debate,' [appellants must] present to the arbitrators 'binding precedent requiring a contrary result.'" *Id.* at 670 (quoting *Jones v. Dancel*, 792 F.3d 395, 403 (4th Cir. 2015)). "Thus, we have emphasized that a district court may not overturn an arbitration award "just because it believes, however strongly, that the arbitrators misinterpreted the applicable law." *Jones v. Dancel*, 792 F.3d at 401 (quoting *Wachovia Secs., LLC v. Brand*, 671 F.3d 472, 478 n.5 (4th Cir. 2012)).

### A. The Arbitrator's observation that Appellants failed to enter into evidence a valid copyright registration is not a manifest disregard of law, is immaterial to the outcome and, thus, is not a ground for vacatur.

Appellants argue that the Arbitrator manifestly disregarded the law by not admitting into evidence a copyright registration. Appellants claim that there is a well-settled rule requiring arbitrators to consider evidence that was not presented to them at the hearing when making their decisions. This argument fails for two key reasons: First, they have identified no such rule. Second, the Arbitrator explicitly stated that the copyright registration would not have changed the result.

Appellants have not provided a clearly defined legal principle for the proposition that the copyright registration was de facto admitted as evidence simply by virtue of being included on the list of potential exhibits. Appellants cite several Fourth Circuit cases allegedly in support of the proposition that "all information in

the Arbitration record is admissible." Appellants' Br. 36–37. However, these cases merely mention the term "arbitration record" and do not discuss admissibility nor the method for offering and admitting evidence in arbitration.

On the other hand, Appellants ignore the applicable AAA rules regarding presentation of evidence. For example, Rule 32 regarding Conduct of Proceedings, states that "[t]he claimant shall present evidence to support its clam. The respondent shall then present evidence to support its defense." R. 32(a), AAA Commercial Arbitration Rules. Similarly, the rules governing evidence provide that "[t]he parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary . . . . All evidence shall be taken in the presence of all of the arbitrators and all of the parties." R. 34(a). The rules explicitly state that "[t]he arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant." R. 34(b).

Clearly, the AAA Commercial Arbitration Rules, which the parties agreed would govern the Arbitration, provide a certain amount of autonomy to the arbitrator in determining when, how, and whether evidence will be admitted. Nowhere do the rules state that exhibits on a pre-hearing list are automatically admissible *and admitted*. Finally, the Scheduling Order clearly states that the exhibit list is for exhibits that "*may be offered* into evidence," not that such exhibits *are admitted*.

22

(JA240 ("Each party should separately list, by number and description, each exhibit that may be offered into evidence by that party (except those exhibits used solely for impeachment). Except upon showing good cause, exhibits which are not listed will not be admitted.") (emphasis in original)).

Furthermore, the Arbitrator noted that, even if the registration had been entered as evidence, it would not have changed the result. (JA125). Appellants do not even attempt to argue that formally admitting the copyright registration would necessitate a different outcome. Instead, they argue that it would simply have enabled the Arbitrator "to make a more definitive reasoned award." Appellants' Br. 37. This is not sufficient to establish a manifest disregard of the law. *See Jones v. Dancel*, 792 F.3d at 403 ("Given the absence of binding precedent requiring a contrary result, we conclude that the arbitrator's determination . . . did not constitute a refusal to heed a clearly defined legal principle.").

### B. Appellants' arguments regarding the Arbitrator's application of copyright law are nothing more than a challenge to the Arbitrator's interpretation of such law.

In order to secure judicial relief on such grounds, it must be shown that the Arbitrator, in making his ruling, was "aware of the law, understood it correctly, found it applicable to the case before [him], and yet chose to ignore it in propounding [his] decision." *Long John Silver's*, 514 F.3d at 349. "When parties consent to arbitration, and thereby consent to extremely limited appellate review, they assume

23

the risk that the arbitrator may interpret the law in a way with which they disagree." *Interactive Brokers v. Saroop*, 969 F.3d 438, 443 (4th Cir. 2020).

Appellants' assertions that the Arbitrator misapplied copyright law are merely challenges to the Arbitrator's interpretation of the law. First, Appellants argue that the Arbitrator misassigned ownership of the allegedly copyrighted designs to the Highsmiths and Shelter. Nowhere does the Arbitration Award state that the Highsmiths and Shelter owned the designs. Rather, he noted that they had a right to use the designs for limited purposes:

> Respondents gave to the Claimants their drawings for the cabinets. Obviously, this was for Claimants' review, approval, and use during the construction process. Claimants were free to use the drawings to measure the compliance of Design Gaps with these drawings and its obligation to install the designed cabinets in accordance with its contractual obligation.

(JA126). Appellants identify a multi-factored analysis required for the determination of copyright ownership in a work-for-hire context. Appellants' Br. 38–39 (citing *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989)). Appellants further state that "*[h]ad* the Arbitrator explored the requirements for Copyright ownership, he would have identified . . . ." Appellants' Br. 39 (emphasis added). This assertion implicitly admits that the Arbitrator did not knowingly disregard an accepted principle of law. *See Long John Silver's*, 514, F.3d at 349 (alterations in original) ("In order to secure judicial relief on such grounds, it must be shown that

24

the arbitrator, in making his ruling, was 'aware of the law, understood it correctly, found it applicable to the case before [him], and yet chose to ignore it in propounding [his] decision.'").

Moreover, Appellants are advocating for a balancing of factors, which may be weighed differently under the facts and circumstances of each case. *See, e.g.*, *Bouchat v. Baltimore Ravens Ltd. P'ship*, 737 F.3d 932 (4th Cir. 2013) (citation omitted) ("[T]he fair use doctrine continues to serve as 'an equitable rule of reason, for which no generally applicable definition is possible' . . . . This balancing necessitates a 'case-by-case analysis' in any fair use inquiry."). Accordingly, Appellants cannot show that, had the Arbitrator applied this analysis, the outcome would have been any different. *See Jones v. Dancel*, 792 F.3d at 403–04 (noting that the fact that "another arbitrator might have reached a different conclusion" is insufficient to show manifest disregard of the law). This argument is not a ground for vacatur under the deferential review applied to arbitration awards and would amount to a decision on the merits.

Second, Appellants argue that the Arbitrator mistakenly determined that Distinctive Design did not directly infringe on the alleged copyrights. Here, Appellants simply disagree with the Arbitrator's determination that "any similarity in the designs is due to the limitations of the space and the client's desired layout." (JA126). However, by including an arbitration clause in their contract, Appellants

25

accepted the decision of an arbitrator and "assume[d] the risk" that they might disagree with the outcome. *Interactive Brokers*, 969 F.3d at 443. Appellants also argue that the Arbitrator improperly found Distinctive Design's use of the drawings to fall within the "fair use" exception; however, the Arbitrator made that finding with respect to the allegations of copyright infringement against the Claimants. (JA125–126 ("Claimants certainly established fair use of the design work, especially considering that Shelter did not profit from the design.")). He found that Distinctive Design simply did not infringe on allegedly protected aspects of the designs. (JA126).

Third, to the extent Appellants are challenging the Arbitrator's finding of fair use, this, again, involves a factored analysis. Appellants are simply challenging the Arbitrator's application of the law and have identified no bright-line rule requiring a contrary result. *See Jones v. Dancel*, 792 F. 3d at 402 ("The plaintiffs fall far short of meeting this burden [to show the arbitrator manifestly disregarded the law] because their argument, reduced to its essence, does nothing more than challenge the arbitrator's interpretation of applicable law.").

Finally, Appellants seem to imply that the Arbitrator manifestly disregarded the law by determining it was outside his authority to require persons not subject to the arbitration agreement to be joined as parties. In his Interim Order, the Arbitrator found he did "not have the authority to order arbitration with the parties who have

26

not agreed to arbitration." (JA335). Appellants identify no binding precedent requiring a contrary result. In that same Interim Order, the Arbitrator allowed Appellants to assert additional counterclaims, including counterclaims under the Copyright Act. (JA336). The Arbitrator based this decision on the broad arbitration clause agreed to by the parties. (*Id.*). Again, Appellants have identified no binding precedent requiring an opposite result. Moreover, Appellants have not even attempted to show that adding the third parties to the arbitration proceedings would have changed the result.[2] As discussed in detail in Section III of this brief, it was the Appellants' prerogative to bring claims that involved deciding the copyright infringement of non-parties; the Arbitrator merely did what was asked of him and decided the issues presented. This is not a manifest disregard of the law.

### C. Appellants' waived their objection to the Arbitrator's interpretation of the Contracts and, in any event, the Arbitration Award can be rationally inferred by the Contracts.

"[A]n arbitrator's interpretation of a contract must be upheld so long as it "draws its essence from the agreement." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006) (quoting *Upshur Coals Corp. v. United Mine* Workers, *Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991)). "Such a circumstance can arise when

---

[2] Appellants were allowed to depose these third parties. (JA316). In addition, these third parties were present at the arbitration, testified, and were subject to cross examination. (JA288–289).

an arbitrator has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong." *Three S. Delaware v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 528 (4th Cir. 2007).

Appellants take issue with the Arbitrator's finding that Design Gaps made enforceable promises to complete the project by various dates despite the fact that a completion date was not expressly included in the Contracts. Notably, Appellants raise this argument for the first time on appeal; thus, the argument is waived. *See, e.g.*, *Kadel v. N.C. State Health Plan for Teachers & State Emps.*, 12 F. 4th 422, 430 (4th Cir. 2021) (quoting *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998)) ("We have repeatedly held that issues raised for the first time on appeal generally will not be considered.").

In any event, Appellants arguments are without merit. Although the Arbitrator found that the Contracts did not contain "specified completion dates," he provided a list of subsequent representations by Design Gaps regarding a promised or reasonable completion date. (JA124, JA122–123). Because these findings were not challenged in district court, the exhibits cited by the Arbitrator are not included in the Record on Appeal. However, as indicated by the Arbitration Award, the Arbitrator cited evidence from the record in support of his finding that Design Gaps made enforceable promises. (JA122–123); *see U.S. Postal Serv. v. Am. Postal Workers Union, AFL–CIO*, 204 F.3d 523, 527 (4th Cir. 2000) ("[A]s long as the

28

arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").

Appellants arguments appear to challenge the Arbitrator's application of basic contract principles regarding contract formation rather than his interpretation of specific contractual provisions. This is not grounds for vacatur. *See Jones v. Dancel*, 792 F.3d 395, 405 (4th Cir. 2015) ("Here, the plaintiffs do not argue that the arbitrator failed to observe any limitations on his authority imposed by the relevant arbitration provisions in the parties' Contracts. Instead, plaintiffs merely restate a theory that we already have rejected, namely, that the arbitrator misinterpreted various legal principles."). Vacatur on these grounds should be denied.

## III.  APPELLANTS HAVE NOT SHOWN THAT, BY DECIDING THE ISSUES PRESENTED TO HIM, THE ARBITRATOR MISBEHAVED IN A MANNER THAT PREVENTED A FAIR OPPORTUNITY TO PRESENT THEIR CASE.

An arbitration award may be vacated under the FAA for "misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). The AAA rules also specify that that each party must be "given a fair opportunity to present its case." R. 33(a), AAA Commercial Arbitration Rules.

Appellants use these provisions to argue that the Arbitrator acted in a way necessitating vacatur when he decided the issues presented because his decisions

precluded later litigation of those same issues. Appellants raise this argument for the first time on appeal; thus, the argument is waived. *See, e.g.*, *Kadel*, 12 F. 4th at 430.

### A. The Arbitrator did not prejudice Appellants by deciding the issues they presented to him.

Appellants argue that the Arbitrator had some unspecified duty to consider whether it was prudent for David Glover to pursue claims of indirect copyright infringement, which relied on a finding of direct infringement against non-parties. Appellants go so far as to state that the Arbitrator should have "avoided decisions" that might have preclusive effects in subsequent litigation. Appellants' Br. 52. Appellants have pointed to no legal precedent to this effect.

The Arbitrator's role was not to consider the arguable best interests of the parties, but merely to decide the issues presented. If Appellants had desired to reserve these issues for adjudication in a separate forum, they could have sought a claim-splitting agreement. For example, in *Doctor's Exchange of South Carolina*, the Fourth Circuit specifically discussed this method as a means to avoid application of res judicata. *Doctor's Exch. of S.C. v. Am.'s Best Contacts & Eyeglasses*, 26 F. App'x 236, 241–42 (4th Cir. 2002). In that case, the parties agreed not to include a sexual harassment claim in the arbitration and the arbitrator was advised that the claim "would be heard and resolved separately." *Id.* at 242. This option was available to Appellants, and they chose not to pursue it. *See id.* ("[T]he course of litigation is

determined, for the most part, by the actions of the litigants.") (quoting *Young–Anderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 774 (4th Cir.1991)).[3]

As discussed above in Section I, the Arbitrator was obligated to resolve all issues presented, and this included deciding whether Distinctive Design infringed on the alleged copyrighted designs and whether Shelter and the Highsmiths could be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (internal citations omitted) ("One infringes contributorily by intentionally inducing or encouraging direct infringement and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."). Mr. Glover advanced these very issues for decision by the Arbitrator. The Arbitrator could not reach a decision on the secondary infringement without first addressing underlying liability. Under Appellants' theory, the Arbitrator ought to have simply accepted as a fact that Distinctive Design infringed on copyrights and then proceeded to analyze whether Shelter and the Highsmiths could be held liable for that infringement.

---

[3] As discussed at length by Appellants—although not tied to any grounds for vacatur—the Arbitrator was concerned by David Glover's efforts to represent himself, his wife, and their business *pro se*. David Glover was insistent that he had the right and ability to represent himself and the other respondents in arbitration. He cannot now turn around and blame his own procedural errors on the Arbitrator.

**B. The Arbitrator ensured that Appellants had every opportunity to gather and present evidence relevant to direct copyright infringement of non-parties.**

Second, Appellants seem to argue that they were not permitted to present evidence in support of their indirect copyright infringement claims. This is demonstrably false. As noted above in Section II.B, Design Gaps had the opportunity to depose and cross examine the non-parties. (JA316). Furthermore, at the close of evidence, the Arbitrator verified that the parties had a full and fair opportunity to present their case:

> At the conclusion of that testimony, as arbitrator, I asked each side if they had an adequate opportunity to present in full the evidence which they thought was relevant and important for me to consider in rendering my Award. Each side advised that they had adequate opportunity to present their case with all relevant testimony and exhibits. Therefore, the merits hearing was closed and the parties afforded an opportunity to present post-hearing briefs and proposed orders.

(JA121). Appellants provide no support for their argument that the Arbitrator "refused to hear evidence pertinent and material to the controversy." Appellants' Br. 52. Nor can Appellants now argue that they were not afforded an opportunity to present any and all evidence they thought material after certifying to the Arbitrator that they had "adequate opportunity to present their case." (JA121).

32

## CONCLUSION

Appellants have not met their heavy burden to demonstrate that this is a rare circumstance requiring a binding arbitration award to be vacated. The Arbitrator provided a final and definite award that satisfies the various standards for reviewing the sufficiency of a written arbitration opinion. The Arbitration Award comports with settled legal principles, and, even if Appellants would apply the law differently, this is not grounds to reconsider the merits of the Arbitration. Finally, the Arbitrator had no duty to refuse to hear issues presented merely because the outcome could negatively impact Appellants' ability to bring future litigation against non-parties. The Arbitrator did exactly what was asked of him. He allowed the parties to investigate and present their cases, considered the evidence presented—even addressing the evidence that was not offered at the hearing—made a decision on all issues, and provided the facts and reasoning supporting those decisions. This is what the parties asked of him and should be more than sufficient to survive judicial review.

For the foregoing reasons, and as further explained herein, Appellees respectfully request that this Court deny the Appellants' appeal affirm the District Court's confirmation of the Arbitration Award.

Respectfully submitted,

*s/Andrea L. McDonald*

James E. Weatherholtz
R. Andrew Walden
Andrea L. McDonald
Womble Bond Dickinson (US) LLP
5 Exchange Street
P.O. Box 999
Charleston, SC 29401
Telephone (843) 722-3400
James.Weatherholtz@wbd-us.com
Andrew.Walden@wbd-us.com
Andi.McDonald@wbd-us.com
*Attorneys for Appellees*

34

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the typeface requirements of FRAP 32(a)(5) because this document has been prepared in proportionately-spaced typeface using Microsoft Word in Times New Roman, 14-point font.

2. This document complies with the word limit of FRAP 32(a)(7) because this document, not including signature blocks, tables, certifications, and other excludable sections, contains 7,969 words.

CERTIFICATE OF SERVICE

Case No. 23-1729  Case Caption Design Gaps, Inc., et al. v. Shelter, LLC, et al.

I hereby certify that the foregoing Appellee's Response Brief was electronically filed on the 1st day of November, 2023, using the CM/ECF system which will send notification of such filing to counsel of record.

By: s/Andrea L. McDonald
Andrea L. McDonald
Womble Bond Dickinson (US) LLP
5 Exchange Street
Charleston, SC 29401
Tel:  (843)722-3400
andi.mcdonald@wbd-us.com
*Counsel for Appellees*

36